352          KAPHAN *v.* RYAN.

CASE No. 1127.

KAPHAN v. RYAN.

RYAN v. KAPHAN.

1. A judgment is valid, although not filed until more than sixty days after the last day of the term of court at which the cause was heard.
2. Parol testimony may be received to prove an agreement in which a written instrument originated and of which it constituted only a part. Thus, where a note was given for a sum certain, payable at a day certain, secured by mortgage, but no money passed, and it is admitted by both parties that these instruments were a security for future advances, it may be shown by parol what the agreement was, and what the bond and mortgage were intended to secure.
3. Where, by consent, a law case is tried by the judge without a jury, his findings of fact cannot be reviewed by this court.
4. In an equity cause the findings of fact reached by a Circuit judge from direct testimony involving the credibility of witnesses, are rarely overruled.
5. A. and B. gave their note and a mortgage of B.'s lands, to secure advances to be made to them in their business, carried on in the name of C., and, for a balance afterwards due on account of such advances, B. gave a note payable at one day, with interest until paid—the creditor retaining the first note and mortgage. *Held*, that the mortgage was not discharged by the note of B., and that the mortgagee might foreclose for the amount stated in B.'s note, as the liquidated balance due on his account, at the date of such note, together with interest according to its terms.
6. In action for foreclosure, where defendant appeared and litigated, the judge may decree foreclosure for the real amount due on the note, although, from an error in the calculation of interest, the complaint demanded judgment for a less sum. It was in substance the allowance of an amendment to the complaint in this particular.

---

Before THOMSON, J., Barnwell, October, 1880.

Both of the actions above stated were commenced in January, 1880, the first on the 7th, the second on the 17th. The note of April 17th, 1874, referred to in the opinion, was as follows:

$1,000.　　　　　ALLENDALE, S. C., April 17th, 1874.

On the first day of November next we, or either of us, promise to pay to W. K. Ryan, or bearer, the sum of one thousand dollars, value received.

M. KAPHAN. [L. S.]

I. KAPHAN.　[L. S.]

The condition of the mortgage was "that if we, the said Manheim Kaphan and Ida Kaphan, do and shall well and truly pay, or cause to be paid, unto the said W. K. Ryan the said debt or sum of money aforesaid, with the interest thereon, if any shall be due, according to the true intent and meaning of said bond and condition thereunder written, then this deed of bargain and sale shall cease, determine, and be utterly null and void; otherwise, it shall remain in full force and virtue."

It appears, from the testimony, that Ida Kaphan was the wife of M. Kaphan and the owner of the lands mortgaged. W. K. Ryan kept on his books an account current with T. Kaphan, and made no entries whatever on his note and mortgage. The last advance was made by Ryan, September 24th, 1874.

The note of Ida Kaphan, closing the account, was as follows:

$383.60.　　　　CHARLESTON, S. C., February 19th, 1875.

One day after date I promise to pay to W. K. Ryan, or order, three hundred and eighty-three 60-100 dollars, with interest from date until paid, at the rate of twelve per cent. per annum, for value received.

Witness my hand and seal.　　　　I. KAPHAN.　[L. S.]

Other facts are stated in the opinion.

*Mr. A. B. Conner*, for appellants.

*Messrs. Mitchell & Smith* and *Robt. Aldrich*, contra.

January 10th, 1882. The opinion of the court was delivered by

McGOWAN, A. J. On April 17th, 1874, Manheim Kaphan, and Ida Kaphan, his wife, executed a note to W. K. Ryan,

factor, of Charleston, for $1,000, payable November 1st, 1874,
and to secure the same mortgaged certain lots in the village of
Allendale, Barnwell county. It is now alleged by the mort-
gagors that the note has been paid in full, and the *first case*
stated in the caption was to compel satisfaction of the mortgage
and for a penalty of $500 against the mortgagee for refusing to
satisfy the same under Ch. LXXXII., § 21, *Gen. Stat.* 428.
The mortgagee insists that there is still due on the note and
mortgage the sum of $404.30, with interest from January 2d,
1880, at the rate of twelve per cent. per annum, and for the
collection of this balance, the *second case* stated was instituted
to foreclose the mortgage.

The main question in both cases is, whether the note and
mortgage have been paid, and, if not, how much remains
unpaid. It seems that early in 1874, M. Kaphan called upon
W. K. Ryan, factor, at his office, in Charleston, to obtain
advances to enable him to carry on his mercantile business at
Allendale, in Barnwell county. He stated that he wanted
$2,000 or more; that the business was his own, but it would be
conducted in the name of his brother, T. Kaphan. An arrange-
ment was made. Ryan was to make advances, from time to time,
as money was needed, and Kaphan was to forward cotton and
to give certain securities to cover the advances. The note and
mortgage now in controversy were executed by M. Kaphan and
Ida Kaphan, in Barnwell county, and sent to Ryan, in Charles-
ton. It appears from the correspondence of the parties, that
there was also in the hands of Ryan some agricultural liens,
but they were either sent back to Kaphan, at his request, or
turned out to be worthless. Ryan never received anything on
these liens. What Kaphan received he retained, and sent only
the cotton. At the time the note and mortgage were delivered,
no money passed, but soon after drafts were drawn on Ryan and
cotton sent to him, as previously indicated would be done, in the
name of T. Kaphan, with no other instructions than to sell and
render an account of sales. No credits were directed to be
placed on the note, but an account of advances and sales of
cotton was opened.

Before November the drafts paid amounted to the sum of

$2,133.32, and the cotton shipped to $1,443.33, leaving a balance overdrawn of $689.99, which was afterwards reduced to $383.60. This account was submitted to M. Kaphan, who approved it and sent to Ryan the note of his wife, Ida Kaphan, closing the same, but making no reference to the bond and mortgage, which was still in possession of Ryan. Subsequently, March 29th, 1875, there was paid the further sum of $71.27.

In the law case for the penalty, the trial by jury was waived and it was agreed that both cases should be tried by the court at the same time. They came on to be heard by Judge Thomson, who dismissed the complaint in the case of the Kaphans for the penalty, and in that of Ryan he gave judgment of foreclosure for the balance due on the amount as fixed by the note of Ida Kaphan. The Kaphans appealed in both cases to this court on the following exceptions :

I. "That the decisions were not filed within sixty days, as is required by Article IV., § 17, Constitution of South Carolina.

II. "That his Honor Judge Thomson erred in giving judgment for the said W. K. Ryan.

1. "Because the note of M. Kaphan and Ida Kaphan for $1,000, dated April 17th, 1874, and due November 1st thereafter, and secured by their mortgage of April 17th, 1874, was for a specific purpose and had been fully satisfied and discharged by payments made to the said W. K. Ryan before November 1st, 1874, as is shown by his complaint and account thereto attached, and as was already corroborated, not only by his own testimony, but by that of M. Kaphan and Ida Kaphan.

2. "Because the said note and mortgage of the said M. and Ida Kaphan could in no way have been held as security for the additional $1,000 advanced to T. Kaphan, of which Ida Kaphan was totally ignorant.

3. "Because the refusal and neglect of the said W. K. Ryan to enforce, or to allow to be enforced, after having been repeatedly requested to do so, the liens which were given to secure the said W. K. Ryan by the said T. Kaphan, was laches on the part of the said W. K. Ryan sufficient to protect the said M. Kaphan and Ida Kaphan against any liability for the additional $1,000, if ever they had been liable therefor.

4. "Because the said W. K. Ryan, having accepted the second note of Ida Kaphan for $383.60, closing the account of T. Kaphan, it was a separate and distinct transaction, releasing M. Kaphan from any further liability on the original note, which was secured by the mortgage of both M. Kaphan and Ida Kaphan, thereby canceling the same, and was settlement in full of the indebtedness of T. Kaphan and in no way connected with or secured by the said mortgage.

5. "Because the indebtedness of T. Kaphan under the securities given W. K. Ryan appears by account, and interest not being recoverable on an open account, the said M. Kaphan and Ida Kaphan cannot be charged with interest, even though they be liable for balance over first $1,000 advanced, the said W. K. Ryan having first brought his action to foreclose on the account of T. Kaphan and not on the note of M. Kaphan and Ida Kaphan, secured by their mortgage, nor on the note of Ida Kaphan for $383.60 closing account of T. Kaphan.

6. "Because his Honor Judge Thomson finds 'that on the 26th day of October, A. D. 1880, there was due and owing to W. K. Ryan by the said M. Kaphan and Ida Kaphan, *upon the sealed note and mortgage mentioned in the complaint,* the sum of $529.77,' whilst his statement shows that his calculations are based on the note of Ida Kaphan for $383.60, which closes account of T. Kaphan and bears interest from its date at twelve per cent. *per annum* and includes interest on the account at the same rate. That in giving judgment upon the sealed note and mortgage mentioned in the complaint, interest is calculated from February 19th, 1875, at the rate of twelve per cent. per annum, while the said note and mortgage, upon which the judgment is given, make no provision for interest.

7. "Because W. K. Ryan only claims in his answer and complaint the sum of $404.30, with interest from January 2d, 1880, at twelve per cent. per annum, making in all, up to October 26th, 1880, the sum of $443.92 still due him, while his Honor, Judge Thomson, finds on the said October 26th, 1880, the sum due W. K. Ryan to be $529.77, and gives judgment in favor of said W. K. Ryan for that sum, the same being $75.85 more than is claimed by the said W. K. Ryan."

It has been decided by this court that a judgment filed more than sixty days after the last day of the term at which the cause was heard is valid. *Koon* v. *Munro*, 11 *S. C.* 140.

It is insisted by the appellants that the note for $1,000 secured by mortgage was paid at maturity in full and the mortgage should be marked satisfied. Whether that is so or not must depend to a large extent upon the agreement of the parties as to the purpose for which the note and mortgage were executed. Upon that subject the parties differ widely in their statements. The Kaphans contend that the note was given simply for so much money loaned, and that as soon as, in the course of business, the amount was in the hands of Ryan, it was to be considered paid, without any regard to the state of the account for advances; while Ryan insists that it was given as collateral security for any balance that might remain unpaid at the time indicated. This is a question of fact, which can only be determined by the evidence.

The note and mortgage are in the usual form and contain no indication of the purpose for which they were given, as the bond did in the case of *Conway* v. *Cunningham*, 6 *S. C.* 351. It was necessary to resort to parol proof to ascertain the agreement of the parties. This evidence was admitted without objection and no exception as to its admissibility is made here. But as something was said in the argument about the effect of parol proof upon the terms of the note and mortgage, it may not be improper to observe that this is not a case in which such testimony tends to vary the terms of a written instrument, but to show the whole agreement in which the instrument originated and of which it *constitutes only a part.* It is said in 1 *Greenl. Evid.* § 284 a, that the rule does not apply to the admission of parol evidence " in cases where the original contract was verbal and entire, *and a part only was reduced to writing.*" *Lewis* v. *Gray*, 1 *Mass.* 297; *Knight* v. *Knotts*, 8 *Rich.* 35; *McGrath and Byrum* v. *Barnes*, 13 *S. C.* 332.

At the time the note and mortgage were given no money passed, and the fact that advances were to be made on them as a security, could only appear by parol. " A mortgage may be taken and held as a security for future advances and responsi-

bilities to the extent of it, when this is a constituent part of the original agreement." In this case both parties agree that this was a constituent part of the original agreement, the only difference being that the one insists that "the security" was to be discharged by the first receipts in the course of business, and the other that it was to cover the final balance after deducting all other payments. In either case the fact does not appear in the note or mortgage and can only be shown by proof of the agreement of the parties.

In the case of *Archer* v. *Hudson,* 7 *Beav.* 556, Frances Kendray, with her uncle Daniel, signed a note for £500 to the York Union Building Company, and proof, without objection, was allowed of a verbal agreement that the note was to cover any "floating balance" which might arise for overdrafts by Daniel, and such proof appearing, it was held to be a fraud to charge the whole note as a debt without regard to the state of the accounts.

What was the agreement of the parties in this case? The only parties present when the agreement was made were Ryan and M. Kaphan, who acted for himself and as agent for his wife, Ida Kaphan. Ryan swears positively that "the securities were given as collateral security for all advances made under the agreement and to secure any balance that might be due after his accounts were rendered," and Kaphan testifies that the "agreement was to advance $1,000 upon the mortgage, and if further advances were made they were to be on liens—liens only." Under this proof and the circumstances of the case, the Circuit judge made an order dismissing the case for the penalty and rendered judgment of foreclosure in the other case, which was equivalent to a finding of fact *that the note and mortgage were given to secure any balance to the extent of* $1,000 *which might remain unpaid upon the account for advances.*

The case of *M. Kaphan and Ida Kaphan* v. *W. K. Ryan* for the penalty is a law case, and, therefore, in that the said finding must stand as the verdict of the jury upon the facts and cannot be reviewed by this court. The case of *Ryan* v. *M. and I. Kaphan,* for a foreclosure, is a suit "in Chancery," and in that this court is not limited to a correction of errors of law, but may reconsider findings of fact. In the exercise, however, of this

appellate jurisdiction, the court has rarely overruled the findings of a Circuit judge reached from direct testimony involving the credibility of witnesses. We cannot say that the view of the Circuit judge upon this question of fact is without evidence to support it. On the contrary, in looking through the testimony, we incline to think that the nature of the transaction and the circumstances of the case all tend to corroborate the testimony of Ryan and to sustain the judgment of the court.

It does not seem to be reasonable that Ryan would advance $2,000 upon the security of a note for $1,000 and some agricultural liens which realized him nothing, and which had to be returned to Kaphan in order to be enforced in the county where they were given. The state of the account showed that his advances were in excess of his receipts, and it is hardly probable that Ryan would have continued to make advances if he had not supposed that the note and mortgage were there to cover any eventual deficiency. An account of advances and receipts was kept separate without reference to the note and mortgage, upon which no credits were entered, and the correspondence shows that the Kaphans never directed the proceeds of the cotton sold to be applied as so many payments on the note and mortgage.

The Kaphans knew that the note was not discharged by the first proceeds of cotton, for they offered to allow Ryan to still hold it if he would make advances the next year. Mrs. Kaphan wrote to Ryan that he could "retain the mortgage in your possession for $1,000," which he could not do if it had been paid and discharged. Mrs. Kaphan, with the consent of her husband, and at his instance, closed by note the balance of the account for advances, which was an acknowledgment that Ryan was not responsible in any way for the agricultural liens, and that the balance of account was correct in amount at least.

Nearly six years elapsed before the claim was put forward that the mortgage was satisfied and did not cover the balance of the account which had been put into the form of Mrs. Kaphan's note. We cannot reverse the judgment of the Circuit judge, that by the agreement of the parties, the note and mortgage were given to secure any balance which, after crediting the proceeds of cotton sold, might remain upon the account for advances.

We are not called upon to give construction to the note and mortgage, but to determine from the evidence in what way and for what purpose they were to be used.

This case is not analogous to those of *Sollee & Warley* v. *Meugy*, 1 *Bailey* 620; *Boyce & Henry* v. *Ewart*, *Rice* 134, and *Lawton* v. *Maner*, 10 *Rich.* 323. In all of these cases the question was as to the *construction of a written guaranty* for the debt of another. This is not the case of a guaranty or surety at all. The only question is: What was the original agreement between a creditor and his debtors as to the nature and character of the security which was given?

But, assuming this view to be correct, it is still further urged that the judge erred in holding that the note of Ida Kaphan, February 15th, 1875, closing up the accounts, was not payment and settlement of the balance of the debt and a discharge of the mortgage.

In the view which this court takes, the real debtor was not T. Kaphan, who was manifestly a mere figurehead, but M. Kaphan and Ida, his wife. They, through and by M. Kaphan, made the arrangement with Ryan. They furnished the securities. Ida Kaphan owned the property embraced in the mortgage, and she closed the account with her note, not as surety or guarantor for any one, but in liquidation of the debt of herself and husband. It is true that the correspondence was at first conducted in the name of T. Kaphan, but it does not appear that such a person ever had any interest in the business, or at any time even saw Ryan on the subject. At the very beginning of the transaction, M. Kaphan informed Ryan that the business would be conducted in the name of T. Kaphan, but that in fact it was his own. If his wife, Ida, did not manage the whole business from the beginning, she certainly finished it in her own name by giving her note. When she closed the account which, as we have seen, was secured by mortgage, by her note, did that have the effect of discharging the mortgage? Was it *payment* or mere *substitution?*

The principle applicable and the authorities are stated in the case of *Gibbes* v. *G. & C. Railroad Company*, 13 *S. C.* 252: "Nothing is payment but that which produces payment or is

received as payment. To give one security for another of equal dignity, without the intention of discharging the debt, is not payment but substitution, and, in such cases, it is well settled that a lien, such as a mortgage previously existing, is not discharged, but remains and still secures the debt in the new form." The note of the Kaphans has not produced payment, and it can hardly be supposed that it was the intention of Ryan to extinguish the old debt, secured by mortgage, for no other purpose than to discharge the mortgage and take in lieu thereof the unsecured note of one of the original debtors.

As we have held that the note of Ida Kaphan, given with the knowledge and consent of her husband, only liquidated and put in another form the balance of the account, we see no error in the judgment of foreclosure for the amount and interest due upon that note. After the balance of the account had been closed by a note, it bore interest according to its terms.

It appears that Ryan, in stating the claim in his complaint, made, in the calculation of the interest, a mistake of about $100. The mistake is patent in the record, and the judge made a correct calculation for himself, and rendered judgment for the true amount. That was, in substance, allowing the complaint to be amended in that particular, which, in furtherance of justice, he had a right to do. If such order had been made in terms, and the case referred to a referee to ascertain the amount due, according to the principles herein announced, the result would have been precisely the same. We cannot say that the judge was in error as to the amount of the judgment of foreclosure.

The judgment of this court is that the judgment of the Circuit judge in the case of *M. Kaphan and Ida Kaphan* v. *W. K. Ryan*, be affirmed; and it is the judgment of this court that the judgment of the Circuit Court in the case of *W. K. Ryan* v. *M. Kaphan and Ida Kaphan*, be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.